483 A.2d 791

Kenneth R. MOATS, et ux.

v.

Kevin Wayne ASHBURN, et al.

No. 175, Sept. Term, 1984.

Court of Special Appeals of Maryland.

Nov. 15, 1984.

Gregory C. Bannon, Hagerstown, with whom were Wachs, Boone, Goerl & Bannon, P.A., Hagerstown, on the brief, for appellants.

Richard W. Douglas, Hagerstown, with whom were John R. Salvatore and Meyers & Young, P.A., Hagerstown, on the brief, for appellees.

Argued before BISHOP, ADKINS and GETTY, JJ.

GETTY, Judge.

Appellants Kenneth R. Moats and his wife filed suit in the Circuit Court for Washington County for personal injuries Mr. Moats sustained in an automobile accident involving Kevin Wayne Ashburn. During preliminary proceedings, a motion for summary judgment was granted in favor of Ashburn, leaving his employers, the Washington County Sheriff's Department and the Washington County Commissioners, as the remaining defendants (appellees herein). Appellants appeal the judgment on a jury verdict in favor of appellees and allege a variety of errors at the trial level.

The accident occurred at approximately 8:45 A.M. on December 15, 1980. The weather conditions at the time were described by Ashburn, who stated:

> "The jail lot was snow covered. On Church Street there was snow at some places of (sic) the road. Of course it was snow covered, not fully, but yet it was slick too."

Ashburn, a deputy sheriff, drove the police cruiser from the jail lot onto Church Street. He applied the brakes and stopped before entering the street and then proceeded in an easterly direction at a speed of two to four miles per hour. From Ashburn's point of entry onto Church Street to the first intersection is a distance of 150 feet. As he was descending Church Street,[1] Ashburn observed Moats, who was stopped at the intersection awaiting a green light. Ashburn applied his brakes at a distance of one hundred feet, but his vehicle continued forward and, after a lapse of approximately twenty or thirty seconds, struck the rear bumper of the Moats car.

The cruiser sustained no damage and the rear bumper of the Moats car sustained a "very small dent about the size of

---

1. Church Street is described by Ashburn as "going down the incline." We do not know the percentage of the grade.

a fifty cent piece ... one quarter to one-half inch deep."
Ashburn's testimony as to causation is somewhat confus-
ing.  He said:

"... and I guess it was within seconds after the brakes
were applied and pushed that there was nothing there, at
least, you know, it was a default in the brakes or the road
was slippery or something but I was just, you know,
there was no control of the vehicle."

On cross-examination, Ashburn described the accident as
follows:

A. Once I hit the brakes the initial time coming out of
the alley or coming out of the back or the rear of the
building and straightening it up, I seen or saw what I
thought was maybe anticipated problems as far as
stopping or going down the incline and vehicles yield-
ing to each other in the intersection, that's when I
started applying the brakes and at that time it
seemed to me, you know, there was nothing there
stopping me, so I continued to pump the brakes
thinking maybe there was a piece of ice and straight-
ening the vehicle up so it wouldn't go to the right or
the left.  There was continuous pumping until finally
then nothing happened at all, until the actual collision
happened which was farther down near the intersec-
tion but prior to the intersection.

Q. Okay, but you didn't slide on the ice.  You're not
testifying to that?

A. I, you know, sliding on the ice, no.  I mean it wasn't
where the rear end of a vehicle, you know, sliding to
the right or the left, no.  It was like hitting it and
like gleaning right along without having control over
it.

Q. Did it (the weather) have an effect on the accident?

A. In the sense that the caution in coming out, you
know, I stated, and I still state that the brakes had
failed.  Whether the brakes failed mechanically or
whether the brakes did not catch, do their job based
on the weather, I'm not a mechanic so I couldn't say

it was the brakes, the mechanical aspect. I'm not, you know, it's one or the other.

Elsewhere in his testimony, Ashburn estimated that twenty to thirty seconds elapsed from the time he first applied the brakes until the impact took place. He had, according to his recollection, three options, namely:

1. "Going to the left side of the road and oncoming traffic,[2]

2. Go straight ahead, or

3. Go to the right and run into a telephone pole or group of new houses that are located to the right of that, right off, you know, it's three feet from the road, the houses and I don't recall any people being there."

Immediately after the accident an investigation was conducted by Officer Lauren Bayer of the Hagerstown Police Department. Officer Bayer, a former deputy sheriff, testified that Ashburn told him "he went to apply the brakes and that nothing happened, the brakes grabbed and locked." At Bayer's request, Officer William Nave of the Hagerstown Police examined the brakes on the cruiser. The master cylinder was full of brake fluid, the brake lining was checked and no air was present in the line. Nave then road-tested the vehicle and found the brakes to be working properly at both high and low speeds. The only problem Nave encountered "was the film of wet snow covering that was on the ground at the time."

On appeal, appellants raise three issues, to-wit:

1. The trial court erred in giving an unavoidable accident instruction.

2. The trial judge erred in failing to grant appellants' motion for directed verdict.

3. The trial judge erred in admitting evidence concerning the names of counsel who represented appellants in prior claims.

---

2. Ashburn did not recall if any vehicles were approaching him from a westerly direction.

We shall reverse the trial court as to the first issue and, therefore, we need not address the other issues raised.

Initially, we must address appellees' assertion that the issue of the unavoidable accident instruction was not properly preserved for review by this Court. The record discloses that after the trial court issued instructions to the jury, counsel for both parties approached the bench. Counsel for appellants stated the following: "Just for the record your Honor, I make an objection to the instruction on the unavoidable accident." Appellees contend that this exception to the instruction was insufficient because appellants failed to specify to the trial court the portion of the instruction to which they objected and the basis or ground upon which the objection was made.

Maryland Rule 554(d) (now 2–520(e)) dictates that "[i]f a party has an objection to any portion of any instruction given, or to any omission therefrom, or the failure to give any instruction, he shall before the jury retires to consider its verdict make such objection stating distinctly the portion or omission, or failure to instruct to which he objects and the ground of his objection." The Court of Appeals has held that a mere reference to the number of a requested instruction which the trial court has declined to grant is not sufficient compliance with the rule to permit review of the instructions. *Shafer v. Bull*, 233 Md. 68, 194 A.2d 788 (1963). But substantial compliance with the requirement of this rule has been held to be sufficient to preserve the right to a review. *Bennett v. State*, 230 Md. 562, 569, 188 A.2d 142 (1962).

■ In the instant case, appellants specifically objected to the portion of the trial court's instructions dealing with the unavoidable accident. Further, the record makes clear that all parties and the court understood the reason for the objection: that the facts of the case did not fit the unavoidable accident instruction. *See Sergeant Co. v. Pickett*, 283 Md. 284, 288–89, 388 A.2d 543 (1978); *Whaley v. Maryland*

*State Bank*, 58 Md.App. 671, 678, 473 A.2d 1351 (1984). We thus conclude that appellants' objection was sufficient to permit our review of the unavoidable accident instruction. We now address the issue of the propriety of the instruction itself.

In *State ex rel. Whitaker v. Greaves*, 191 Md. 712, 62 A.2d 630 (1948), the Court of Appeals defined an unavoidable accident as "an inevitable occurrence, not to be foreseen and prevented by vigilance, care and attention, and not occasioned or contributed to, in any manner, by the act or omission of the defendant." The trial court in the case *sub judice* instructed the jury in accordance with *Whitaker*. The difficulty we perceive is that the facts of this case did not warrant submission of an unavoidable accident instruction as a defense to the ultimate issue of negligence.

An instruction not resting on evidence in the case amounts to an improper abstraction. *Baltimore Transit Company and Penny v. Pue*, 243 Md. 256, 220 A.2d 551 (1965). Ashburn said that the brakes failed, or the road was slippery "or something." He also advised the investigating officer, Bayer, that the brakes grabbed and locked. An immediate examination of the cruiser revealed that the brakes were in proper working order. Additionally, Ashburn admits that he had three alternatives and chose to proceed straight ahead striking the Moats vehicle. Whether an accident would have occurred had he opted for either of the other two choices available to him is purely speculative in view of the fact that he was proceeding between two and four miles per hour. In any event, the collision with Moats was not "an inevitable occurrence not to be foreseen and prevented by vigilance, care and attention, and not occasioned or contributed to, in any manner, by the act or omission of the defendant." *Whitaker, supra*.

A proper instruction on the facts of this case would have included the sudden emergency doctrine in determining whether Ashburn, under the circumstances confronting him at the time, exercised due care. The jury could have determined, under the emergency situation, whether in the

light of the alternatives available to him, and the time available to him to recognize and evaluate those alternatives, he made a choice that a reasonable, prudent person would make. *See Armstrong v. Johnson Motor Lines*, 12 Md.App. 492, 280 A.2d 24 (1971); *Effler v. Webber*, 18 Md.App. 162, 305 A.2d 485 (1973).[3]

The bottom line in cases similar to the case before us is whether under *all* the circumstances the defendant was negligent and not whether he could not have avoided the collision at the last minute. The trial court correctly and fully instructed the jury with respect to negligence. Appellees requested no instruction on the duty of a driver when confronted with an emergency. That is quite different from an instruction concerning an unavoidable accident. An emergency does not necessarily render an ensuing accident unavoidable, as the following cases illustrate.

In *Fogle v. Phillips*, 191 Md. 114, 60 A.2d 198 (1947), two vehicles collided at the crest of a hill on a narrow road in Carroll County. The defendant testified that he moved to his left to avoid four pedestrians and could not return to his proper lane before cresting the hill. He requested an unavoidable accident instruction which was refused; he requested no instruction on an emergency situation. Affirming the trial court's refusal to grant the suggested instruction, the Court of Appeals said, "if he went further to the left than was required to avoid the pedestrians and could not get back in time to prevent striking the car in which the plaintiff was riding, then he was responsible for the injuries he caused." The Court held that the case was properly submitted to the jury on appropriate instructions as to negligence.

---

3. A case factually similar to the present case is *Miller v. Reilly*, 21 Md.App. 465, 319 A.2d 553 (1973). In *Miller*, the driver was descending a hill toward an intersection controlled by a traffic light when her brakes failed. She attempted to turn to her right at the intersection, crossed over the median barrier and collided with a vehicle proceeding from her right to her left on the intersecting road. This Court (Gilbert, C.J.) held that the case was properly submitted to the jury on the doctrine of sudden emergency (*cert. denied*, Sept. 11, 1974).

The earlier case of *Garozynski v. Daniel,* 190 Md. 1, 57 A.2d 339 (1947), involved a defendant who said he swerved to avoid a man who jumped out between two cars and could not avoid striking the plaintiff. A police officer testified that the appellant, who was intoxicated, told him he didn't know how the accident happened. Two other witnesses saw no one step into the path of defendant's car. The court's instructions to the jury embodied what was defendant's responsibility in case of emergency and refused the unavoidable accident instruction sought by the defendant. The Court of Appeals held that unavoidable circumstances were not appropriate to the case. *See also, Coplan v. Warner,* 158 Md. 463, 149 A. 1 (1930).

We hold that the facts of the instant case did not warrant the unavoidable accident instruction. By Ashburn's own account he elected to follow a course that resulted in the collision. His contradictory account of the cause of the accident, furthermore, did not provide sufficient basis for allowing the jury to consider whether the accident was avoidable; they could do no more than speculate.

JUDGMENT REVERSED; CASE REMANDED FOR NEW TRIAL.

COSTS TO BE PAID BY APPELLEES.